**R. C. WATSON**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE OF the UNITED STATES.**

No. CA 3–78–0379–C.

United States District Court,
N. D. Texas,
Dallas Division.

Oct. 5, 1979.

Gary Glasser, Glasser & Brown, Dallas, Tex., for plaintiff.

Kenneth J. Mighell, U. S. Atty., Martha Joe Stroud, Asst. U. S. Atty., John M. Stokes, Regional Atty., Paula Mastropieri-Billingsley, Asst., Dept. of Health, Ed. and Welfare, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Secretary of Health, Education and Welfare, denying his claim for disability insurance benefits and for supplemental security income.

On June 8, 1976, claimant filed an application for a period of disability and for disability insurance benefits and supplemental security income. The claimant alleged he was unable to work in November of 1974, because of a psoriasis affliction. The plaintiff claims that he was afflicted with several severe medical conditions, all of which in combination should have been considered by the Administrative Judge.

Both applications were denied administratively initially and on reconsideration after a physician and disability examiner evaluated the evidence and found that plaintiff was not disabled. The Administrative Law Judge, before whom plaintiff and an expert vocational witness appeared, considered the case de novo and on November 17, 1977, found that plaintiff was not disabled within the meaning of the Social Security Act, as amended, and that plaintiff was not eligible to supplemental security income under the Act. The Administrative Law Judge's decision became the final decision of the Secretary of Health, Education

and Welfare, when the Appeals Council approved it on February 24, 1978.

STATEMENT OF FACTS

Plaintiff Raymond Clarence Watson was born on July 9, 1922, and went to a year and a half of high school. He is 55 years old, weighs 210 pounds, is five feet four inches (5'4"), and has four (4) adult children. He can't spell very well (Transcript, p. 25, hereinafter, "Tr.") and he is a slow reader (Tr. 26). The only work experience the plaintiff has had is in the field of welding and roofing (Tr. 21). The last time he worked was in 1974 for Champion Carriers Company, and in that same year he had a portion of a finger cut off in June, 1974 (Tr. 31). The plaintiff is receiving disability benefits from the Veterans Administration (Tr. 23) for non-service related disabilities.

The plaintiff is inflicted with psoriasis which becomes raw and irritated when he performs his occupation as a welder. Due to this condition he has had to shave his head three (3) times in the past, sweating irritates this condition, and even clothes will aggravate it (Tr. 24). The plaintiff also is inflicted with other serious medical problems.

The report from Dr. Lawrence B. Meyerson dated July 22, 1976 (Tr. 84–88) stated that plaintiff received therapy for psoriasis in January, 1975, June, 1975, and April, 1976 (Tr. 84). During the physical examination on April 30, 1976, Dr. Meyerson observed extensive large psoriatic plaques on plaintiff's trunk and extremities, and also some involvement on the scalp (Tr. 85). Dr. Meyerson diagnosed psoriasis vulgaris, for which there is no permanent cure, although apparently psoriasis can be controlled (Tr. 88). It is important to receive continued and proper treatment by a physician in order to help improve this skin problem.

Plaintiff was examined in July and August, 1976, at the Veterans Hospital in Waco (Tr. 89–103). In July, an X–ray and orthopedic examinations were conducted. The conclusion shown from the X–rays was moderately severe degenerative arthritis of the lumbar spine. The report also noted severe psoriasis involving fifty percent of plaintiff's trunk and large areas of the scalp, arms and legs (Tr. 101). The diagnosis in August, 1976, included psoriasis, mild chronic bronchitis, umbilical hernia, an abnormal effective circulating blood volume which questionably indicated left ventricular strain or ischemia (Tr. 103).

Plaintiff was referred by the Social Security Administration to Gus Schreiber for a consultative examination in May, 1977 (Tr. 104–116). Plaintiff's medical history exhibited a "trick" left knee, existing since World War II, a right herniorraphy in 1948, amputation of the proximal phalanx, second left finger in 1948, amputation of the distal phalanx, third right finger in 1974, and in 1954 an injury to nerves in his left elbow region which prevented him from fully pronating the left elbow (Tr. 104).

Plaintiff reported that he became short of breath after walking five blocks at ordinary speed on level ground, and that he has had no alcohol for several years and never used alcohol in more than social amounts (Tr. 104). The physical examination indicated plaintiff's heart and breath sounds were normal as were his deep tendon reflexes and plantar reflexes (Tr. 104). Dr. Schreiber diagnosed Laennec's Cirrhosis with enlargement of plaintiff's liver which probably caused most of his symptoms, and since the liver was enlarged his condition was probably treatable (Tr. 105). The diagnosis also included psoriasis, eczematous and no arthritis (Tr. 105). Dr. Schreiber believed that plaintiff's chest discomfort attributed to his enlarged liver (Tr. 105). The doctor also stated that plaintiff had no limitation of motion of the extremities from the psoriasis and could probably lift twenty to fifty pounds on occasion (Tr. 105). The chest X–rays interpreted by Dr. Schreiber indicated hypertrophic arthritis dorsal vertebrae (Tr. 105). The single and then double master's tests were negative (Tr. 109). Plaintiff had minimal dyspepsia with no pain (Tr. 109).

Plaintiff testified he received a $600 settlement from his former employer when his finger was cut off in an industrial accident in 1974 (Tr. 22). Plaintiff received $185 a

month non-service connected benefits from the Veterans Administration (Tr. 23). Plaintiff testified that in a welding situation his psoriasis became raw and irritated (Tr. 23). Plaintiff stated that sometimes he had trouble stooping over because of a back problem (Tr. 24). Plaintiff could not weld without sweating which caused his skin to turn red and irritated, with occasional fever (Tr. 70). Plaintiff testified he was able to walk and drive a car (Tr. 26).

Dr. Robert Lovitt, a vocational expert, testified to jobs available for plaintiff considering his condition, age, education, and work experience (Tr. 28). Dr. Lovitt stated that he was familiar with the Dallas area job situation in reference to handicapped persons and he had studied the evidence and heard plaintiff's testimony (Tr. 27). In his opinion plaintiff could perform in the general category of jobs called packagers (Tr. 28). According to Dr. Lovitt there is little physical exertion involved in this category and *some* of these jobs are located in "air conditioned environments" (Tr. 28). Apparently, these jobs are performed from either a standing or sitting position (Tr. 29). Thus, "with air conditioning" and "little physical exertion," it is asserted that plaintiff "would not perspire much" (Tr. 28). Dr. Lovitt never explained what percentage of jobs were air conditioned or whether claimant could realistically compete in this job market given his situation.

Dr. Lovitt also testified that plaintiff could be "an assembler" and that many of these jobs are found in air conditioned or well ventilated environments (Tr. 29). In Dr. Lovitt's opinion, these jobs would result in a minimal amount of perspiration or noxious environmental pressure upon plaintiff (Tr. 29). Dr. Lovitt also testified that such jobs exist in large numbers and in all parts of the state (Tr. 29). Dr. Lovitt testified that although plaintiff could do light janitorial work (Tr. 29) that in view of his minor back problem some of these light janitorial jobs might be ruled out (Tr. 29–30). However, in Dr. Lovitt's opinion plaintiff's back problem would not be a hindrance to him as a *packager* (Tr. 30).

The main issue in this case is whether there exists on the record substantial evidence to support the Administrative Law Judge's decision that claimant is not disabled nor entitled to benefits under the Social Security Act. The role of a court judicially reviewing the decision of an Administrative Law Judge is limited to determining whether there is substantial evidence in the entire record to support the fact findings adopted by the Secretary, and not reweigh the evidence, or try the issues de novo, or substitute the judgment of the Court for that of the Secretary. *Goodman v. Richardson,* 448 F.2d 388 (5th Cir. 1971). In addition, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973).

It is clear that after a claimant has met the initial burden of establishing a medical impairment so severe that he cannot perform the kind of work in which he had previously been engaged, the Secretary has the burden of producing a vocational expert to supply substantial evidence bearing on claimant's ability to perform substantial gainful activity. *Spaulding v. Califano,* 427 F.Supp. 982 (1977). See *Timmerman v. Weinberger,* 510 F.2d 439 (8th Cir. 1975). See also *Klug v. Weinberger,* 514 F.2d 423 (8th Cir. 1975). In the case at bar the claimant has met his initial burden of disability since he was a welder and it is undisputed that his psoriasis problem alone prevents him from welding. *Laffoon v. Califano,* 558 F.2d 253 (5th Cir. 1977). Furthermore, it is not sufficient to say that a man suffers some form of physical impairment yet can do "light work." It must be shown medically that he can perform the physical activities certain jobs require without serious aggravation to present physical impairment or to general health. Otherwise the Hearing Examiner's findings would amount to pure speculation." *Garrett v. Richardson,* 471 F.2d 598 at 603 (1972).

As the Court in *Timmerman v. Weinberger,* at 442, stated: "The test is wheth-

er a particular job is *realistically* within the physical and mental capabilities of the claimant." The "facts pertaining to the capacity of a specific individual can be supplied only by particularized proof." *Taylor v. Weinberger,* 512 F.2d 664.

 In addition, in a claim for disability benefits, the Secretary is required to consider claimant's several impairments in combination, rather than only separately, and must consider claimant's subjective pain, which alone may constitute disability. *Spaulding v. Califano,* 427 F.Supp. 982 (Mo. 1977). It is uncontested that claimant is short, obese, inflicted with Laennec's Cirrhosis, has hypertrophic arthritis, dorsal vertebrae, mild bronchitis, two partially amputated fingers, and is constantly discomforted by the itching caused by psoriasis and sweating. Additional medical reports indicate other ailments of claimant including an injured left elbow, a "trick" left knee, a hernia, enlarged liver and spleen, problems bending over, problems with walking distances. There is no evidence to show that the Secretary considered all of claimant's impairments in combination or that certain types of work available to claimant would not aggravate these impairments or his general health. In this regard the Administrative Law Judge only asked the vocational expert to assume claimant has a back problem (Tr. 29, 30), when testifying to the available opportunities. This evidence is insufficient without considering it separately as an impairment and in combination with all other of claimant's impairments, including the pain caused by the psoriasis.

Moreover, the Secretary must submit evidence that not only does there exist work either in the region where the claimant lives or in several regions of the county, but additionally that such jobs exist to a substantially gainful extent, even if the work is light and sedentary. Available part-time work without more does not carry the Secretary's burden of establishing the availability of substantial gainful employment. The record in this case does not develop the extent of realistic employment

available to claimant on a substantially gainful basis, given his age, education, work experience and physical condition, and therefore a finding of a realistic job market for claimant is not supported by the evidence.

Accordingly, defendant's Motion for Summary Judgment should therefore be denied, and plaintiff's Motion for Summary Judgment granted. Moreover, this case should be remanded to the Secretary for further findings not inconsistent with this opinion.

Plaintiff's counsel is hereby requested to submit an appropriate order.