**Jack C. JEFFCOAT**

v.

**SECRETARY OF HHS.**

No. 1:94–CV–501.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 7, 1995.

Cris E. Quinn, Reaud Morgan & Quinn, Beaumont, TX, for plaintiff.

Steven MacArthur Mason, Asst. U.S. Attorney, Tyler, TX, for defendant.

***MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION***

SCHELL, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff's applications for disability insurance benefits.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

Nov. 9, 1995.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

I. Introduction

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's applications for disability insurance benefits ("DIB"). Plaintiff claims disability due to back, shoulder, knee, and ankle problems. He contests the Secretary's decision by asserting that the Administrative Law Judge (ALJ) erred in finding him not disabled.

This case has been referred to the undersigned United States Magistrate Judge for review, hearing if deemed necessary, and submission of a report with recommended findings and conclusions. See 28 U.S.C. § 636(b)(1)(B) and the Local Rules for the Assignment of Duties to United States Magistrates. For the reasons discussed below, it is the Magistrate Judge's recommendation that the ALJ's finding be reversed.

A. Judicial Review

The limited role of the court is to determine whether the Secretary applied the legal proper standards, and whether the Secretary's decisions are supported by substantial evidence. *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990); *Lovelace v. Bowen,* 813 F.2d 55, 57 (5th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Marcello v. Bowen,* 803 F.2d 851 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)). Substantial evidence exists when there is more than a scintilla but less than a preponderance of evidence to support a conclusion. "This substantiality test must be based on the record taken as a whole rather than a single piece of evidence." Larry M. Gropman, Judicial Guidelines for Representing Social Security Disability Clients, 20 SOC.SECURITY REP.SERVICE 674 (1990).

A determination as to whether there is substantial evidence in the entire record to support the fact findings or decision of the Secretary, as the trier of facts, does not involve reweighing the evidence, or trying the issues de novo, or substituting the judgment of the court for that of the Secretary. *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987); *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986). Rather, this court must "scrutinize the record in its entirety to determine whether substantial evidence supports the Secretary's findings." *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. See *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Elements of proof to be weighed in determining whether substantial evidence ex-

ists include: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)). The main focus of this report is on the fourth factor.

B. Eligibility for Disability Insurance Benefits

■ To qualify for disability insurance benefits, the plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C.A. §§ 416(i), 423. Those claiming disability insurance benefits under the Social Security Act have the burden of proving their disability. *Demandre v. Califano,* 591 F.2d 1088 (5th Cir.1979), cert. denied, 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir.1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973), cert. denied, 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

■ Establishment of a disability is a two-step process. First, plaintiff must prove that he suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.A. § 423(d)(1)(A). Physical or mental impairment means "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Second, plaintiff must prove that an impairment renders him unable to engage either in the work he previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

■ Consequently, proof of the existence of a disease or an impairment, by itself, does not establish a disability. The plaintiff must also show preclusion from engaging in any substantial gainful employment. *Herridge v. Richardson,* 464 F.2d 198 (5th Cir.1972); *Ratliff v. Richardson,* 445 F.2d 440 (5th Cir. 1971). Title 42 U.S.C. § 423(d)(2) provides in part that one's physical or mental impairment must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, a specified job vacancy exists for him, or he would be hired if he applied for work. The burden is a heavy one, so stringent that it has been described as "bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981).

C. Exhaustion of Administrative Remedies

1. General Requirements

Administrative steps which a social security disability claimant must exhaust before bringing suit in federal district court are summarized by the Fifth Circuit as follows:

> The Secretary has established a regulatory system for administrative review, leading up to final decision that may then be appealed to the district court. The process is begun when an individual files a claim with the SSA for benefits. This claim is either granted or denied, creating an initial determination. See 20 C.F.R. §§ 416.1404 to 416.1405. Next, the claimant must file for and receive a request for reconsideration. See generally 20 C.F.R. §§ 416.1407 to 416.1422. The Secretary reviews the claim again, and then issues a reconsidered determination. 20 C.F.R. § 416.1420. After obtaining the initial and reconsidered determinations, a dissatisfied claimant may file for an evidentiary hearing before an ALJ. See generally 20 C.F.R. §§ 416.1429 to 416.1468. If the claimant still objects to the decision, he or she may appeal the ALJ's determination to the Appeals Council. See generally 20 C.F.R. §§ 416.1467 to 416.1483. The decision rendered at the initial, reconsideration, and ALJ stage is binding on the claimant unless further ad-

ministrative review with the Appeals Council is sought within 60 days. These four steps exhaust the claimant's administrative remedies.

Following this exhaustion of the administrative remedies with a final decision being rendered by the Appeals Council, judicial review may be sought in the district court. 20 C.F.R. §§ 416.1400 and 416.1481. See also *Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201 (1977) ("Section 205(g) clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.'"). Although a decision rendered on a claim at each stage of the proceedings is final and binding on the parties unless they proceed to the next step in the process, the regulatory scheme provides that a "final decision" allowing judicial appeal is rendered by the Secretary for the purposes of section 205(g) of the Social Security Act when the Appeals Council either reviews or denies review of the ALJ's decision. See 20 C.F.R. §§ 416.1405, 416.1421, 416.1455, 416.1481. After such a "final decision," the claimant has 60 days in which to file for judicial review of the decision or else it is binding. 20 C.F.R. § 416.1481.

*Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.1987), cert. denied, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987).

2. Proceedings in This Case

Plaintiff filed his application for disability benefits on November 30, 1988, alleging disability since January 2, 1984 due to back, foot, and knee problems. (Tr. 83). Plaintiff's application was denied administratively. (Tr. 109–11). He requested reconsideration, which was denied. (Tr. 104–06).

Dissatisfied with those determinations, plaintiff requested that his claim be considered de novo by an Administrative Law Judge of the Social Security Administration. Plaintiff's request was granted, and on October 18, 1989 a full hearing was conducted, at which plaintiff appeared and testified. (Tr. 27–59). The Administrative Law Judge issued a recommended decision on February 27, 1990, finding that plaintiff was not disabled under the Social Security Act, and denying his claim for social security benefits. (Tr. 13–20). The ALJ found that plaintiff could return to his former work, and made a further finding that, assuming he could not, he possessed skills transferrable to other occupations.

Plaintiff thereafter sought review of the recommended decision before the Appeals Council. The Appeals Council denied the request for review on April 1, 1991. (Tr. 2–3) Therefore, the decision of the Administrative Law Judge became the final decision of the Secretary.

The judicial review which this court presently undertakes does not represent the first time this matter has been before it on judicial review. On September 23, 1992, the undersigned recommended reversal of the Secretary's decision and remand of the matter to the ALJ. (Tr. 189–209). This report was adopted by the district judge (Tr. 188), and the matter was remanded to the ALJ. (Tr. 263–64). The basis for the remand was that the medical records before the ALJ contained documentation of medical conditions likely to cause pain consistent with the plaintiff's complaints, yet the ALJ discredited plaintiff's subjective complaints of pain without articulating a reason. (Tr. 207–08).

On remand a different ALJ upheld the initial finding of no disability. (Tr. 177–84). Again the subjective complaints were discredited, although the ALJ attempted, by means of examining certain daily activities in which plaintiff allegedly engaged, to furnish a reason for discrediting plaintiff's complaints. (Tr. 18). Review of the second ALJ decision was denied by the Appeals Council (Tr. 170–71), and this appeal was filed in the district court.

No issue of failure to exhaust administrative remedies having been raised by defendant, and none being apparent from a review of the entire record, plaintiff has standing to pursue this action for judicial review of the second ALJ decision.

## II. The Evidentiary Record

The report and recommendation of the United States magistrate judge dated September 23, 1992 sets forth in detail the plain-

tiff's age, education, and work experience, as well as the relevant medical evidence. These sections need not be repeated here. As detailed below, the determinative issue at this stage of the proceedings concerns the transferability of skills acquired by plaintiff to other employment opportunities. It is worthwhile, therefore, to survey the evidence relating to transferrable skills acquired by plaintiff over the course of his work history.

A. Union Steward

In his initial application for disability benefits, plaintiff indicated that he had held the positions of "salesman, insurance," "foreman, construction," and "steward, ironworkers' union" in the fifteen years prior to the date he ceased working.

At the first hearing, plaintiff testified as to his job responsibilities as a union steward. As a union steward he was fully responsible for carrying out the typical functions of any ironworker. In other words, he functioned primarily as a skilled ironworker, and his steward duties were in addition to his ironwork responsibilities. (Tr. 35–36).

He claimed that his additional duties as a steward were to field complaints from the union workers and to try to "ke[ep] problems down between the men." (Tr. 67) (e.g., he would try to smooth over disputes that arose between the welders and the structural workers (Tr. 36)). According to his hearing testimony, he was not required to prepare any reports. If a grievance against the employer were voiced, he would transmit the information to the local business agent, but would not become otherwise involved by, for example, drafting a report or participating in arbitration. (Tr. 37). This testimony is wholly uncontroverted with the possible exception of the assertion that he was not responsible for drafting reports. On his initial application, plaintiff checked a "Yes" box in response to a question which read: "In your job did you ... do any writing, complete reports, or perform similar duties?" (Tr. 67).

B. Construction Foreman

Also relevant are plaintiff's responsibilities during the period of time when he served as a foreman. In his initial application for benefits plaintiff wrote that in this position he "looked out for the safety of the men and kept production going. Wrote reports on the type of work done." He listed the job title as "foreman" and the type of business as "construction." However, at the hearing it became clear that Mr. Jeffcoat did not serve as a typical "construction foreman" as that term is defined in the Department of Labor's Dictionary of Occupational Titles. Rather, in order to be consistent with his hearing testimony, the only evidence there is concerning the nature of his employment other than the initial application for benefits, his position should be classified as that of "crew foreman."

When Mr. Jeffcoat was a crew foreman [1] he supervised between 6 and 10 metalworkers. The crew foreman acted as a kind of father figure to some of the younger workers and as a morale booster. (Tr. 56). As crew foreman he would make sure that the scheduled work was being completed. He would not schedule the jobs or plan the specifics of how they would be completed. He did not read blueprints. (Tr. 231). Mr. Jeffcoat did not prepare schedules or draft time reports. These responsibilities fell to the general foreman who oversaw all the workers. His only clerical responsibilities were to keep the general foreman apprised of what jobs had been completed during the course of the day and to inform the foreman of the number of hours spent by the workers on the various types of jobs. (Tr. 56). These figures were used by the general foreman in the completion of time reports. As an aid in reporting this information to his superiors, he would from time to time jot himself little notes. (Tr. 56). The uncontradicted testimony of Mr. Jeffcoat was that his reference to reports in the initial application was meant to imply the mere oral conveyance of the hours/jobs completed information to the general

1. The record indicates that he served as a foreman during only approximately 5% of his career as an ironworker. (Tr. 37).

foreman, who would then include it in the time reports he drafted.

C. Insurance Salesman

The final position Mr. Jeffcoat listed on his initial application for benefits was that of insurance salesman. He attempted this vocation on and off for a period of four to five months. (Tr. 236). In fact, he was nothing more than a trainee. (Tr. 236).[2] After a few months, his boss fired him for failure effectively to sell the products. (Tr. 239–40). Mr. Jeffcoat believed that the termination was probably justified because he lacked the speaking ability and educational background necessary for effective marketing of the products. His increasing mobility problems further impeded his success in this endeavor. Mr. Jeffcoat testified that he was experiencing great difficulty getting in and out of the car with the frequency required of a traveling insurance salesman. (Tr. 39, 239).

III. The Secretary's Decision

A. Sequential Evaluation Process

The Secretary's regulations require a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (1986). First: Is the plaintiff currently engaging in substantial gainful activity? (If so, a finding of nondisability is required to be made and the inquiry ends.) Second: Does the plaintiff have a severe impairment or combination of impairments? (If not, a finding of nondisability is required and the inquiry ends.) Third: Does the severe impairment meet or equal those in the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1986)? (If so, disability is presumed and benefits are awarded.) Fourth: Does the impairment prevent the performance of the plaintiff's regular previous employment? (If it does, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Secretary.) *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987). Fifth: Is there work in the national economy which the plaintiff can perform? This final evaluation step involves the determination of whether the plaintiff's impairment, after considering his age, education, and other work experience, prevents the him from performing other work which exists in the national economy. 20 C.F.R. § 404.1520. (If the Secretary shows that the plaintiff can perform alternative employment, the burden then shifts back to the claimant to show he or she cannot perform the alternative labor. Id.; *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986)).

B. What Is Contested in This Case

The first ALJ report made a finding of nondisability and denied the claim at the fourth step. (Tr. 19–20). On remand, the second ALJ disagreed with the first ALJ by finding that the plaintiff could not, due to his medical complications, return to his former job as a metalworker. (Tr. 181). (For purposes of this review, it is established that plaintiff cannot return to his prior work, as it is the second ALJ decision which is on review.). However, the second ALJ upheld the ultimate disposition of the first ALJ by finding plaintiff nondisabled at the fifth step because of the existence of transferrable work skills: "The claimant has acquired work skills, such as clerical skills, scheduling, directing, supervising and knowledge of use of tools and equipment in his craft which he demonstrated in past work." (Tr. 183).

IV. Discussion

A. General Rules for Decision

1. Prima Facie Case

Plaintiff has the burden of establishing disability by a preponderance of the evidence. Once plaintiff establishes a prima facie case by showing an inability to perform relevant previous employment (i.e., by reaching the fourth step and establishing it), the burden shifts to the Secretary to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.

To rebut a prima facie case, the Secretary must come forward with particularized proof of plaintiff's individual capacity to perform

2. This assertion is supported by the fact that Mr. Jeffcoat's superior in the insurance business, Mr. Sharpe, told Mr. Jeffcoat upon firing him that he had kept him on longer than he had ever before kept a trainee.

alternate work considering plaintiff's age, education, and background, as well as the job requirements.

2. Transferability of Skills

The Secretary's finding that plaintiff obtained transferable skills from past employment must be supported by substantial evidence. The transferability of skills depends largely on the similarity of occupationally significant work activities among the different jobs. 20 C.F.R. § 404.1568(d)(1) (1986). Transferability is most probable and meaningful among jobs in which: (i) the same or lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes or services are involved. 20 C.F.R. § 404.1568(d)(2) (1986). A complete similarity of all three factors is not necessary for transferability. When skills are so specialized or have been acquired in an isolated vocational setting so that they are not readily usable in other work settings, the skills are not transferable. 20 C.F.R. § 404.1568(d)(3) (1986). Further, when a claimant has performed work for a very short period of time and has, due to inability to adapt to that type of work, left that field, this period of employment generally does not qualify as past relevant work for purposes of determining transferable skills. Rather, the attempt is considered an "unsuccessful work effort." 20 C.F.R. § 404.1574(a)(1); *York v. Shalala,* No. 92–8620, 16 F.3d 1215 (5th Cir. Feb. 11, 1994) (cited in Jon C. Dubin, Social Security Law, 26 TEX.TECH.L.REV. 763 (1995)); *Sample v. Shalala,* 999 F.2d 1138, 1142 (7th Cir.1993).

In addition, for the Secretary to find that an individual of advanced age (i.e., 55 or older), such as the plaintiff, has skills transferable to skilled sedentary work, there must be little, if any, vocational adjustment required in terms of tools, work processes or setting, or industry. 20 C.F.R. Subpart P, Appendix 2, § 201.00(f) (1986). Plaintiffs who meet the criteria of this section are presumed disabled unless they have a "particularly" transferable skill or vocational asset. To rebut the presumption, the Secretary is required to show that the individual has skills which are directly transferable to sedentary work.

3. Skill Defined

A skill is a "learned power of doing something competently; a developed or acquired aptitude or ability." Webster's Third New International Dictionary (1964). Transferable skills "refer to learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise." The Secretary may not base a finding of transferability of skills on aptitudes common to most persons, such as the ability to see, think, use judgment, or use one's hands. Id.; *Weaver v. Secretary of HHS,* 722 F.2d 310 (6th Cir.1983). Thus, skills must be acquired and must relate to specific work activities. See 20 C.F.R. § 404.1565(a) (1986).

B. Application of the Rules to This Case

The ALJ appearing at the second hearing found in his written decision that the plaintiff possessed the following skills: "clerical skills, scheduling, directing, supervising and knowledge of use of tools and equipment in his craft." (Tr. 181). The ALJ found these skills transferrable to the jobs of "time keeper, work scheduler, and maintenance dispatcher." (Tr. 181).

It is clear plaintiff possesses directing and supervising skills by virtue of his many years as "team leader." It is also doubtless he possesses extensive knowledge of the tools and equipment used in his former craft. However, there was absolutely no testimony at the hearing to support the ALJ's finding that plaintiff himself possessed scheduling skills or clerical skills.[3] Rather, these skills were first mentioned by the vocational expert, who testified as to the skills typically possessed, on average, by persons holding

3. The only extra-testimonial indication that plaintiff possessed clerical skills stems from his indication on his initial application for benefits that he played some role in writing reports. Plaintiff's hearing testimony attempted to explain away this statement by arguing that his role in report writing was an indirect one—that of a conveyer of information.

the jobs "construction foreman" or "union steward" throughout the nation. Based on these presumed skills, the vocational expert then testified that plaintiff would be able to transfer his skills to the jobs of time keeper, work scheduler, and maintenance dispatcher. (Tr. 47). The vocational expert testified that these jobs existed by the thousands in the national and regional economies.

Yet, the uncontroverted testimony at trial was that plaintiff functioned more as a working foreman and a working steward and that he was not involved in clerical functions. Asked to accept for the sake of argument that plaintiff's jobs were actually as he described them to be and not as they are defined nationally,[4] the vocational expert admitted that the plaintiff's skills would not be transferrable to the three jobs which he proposed.

With regard to the three jobs to which the vocational expert suggested that the skills of a typical construction foreman or union steward could be transferred, the uncontradicted testimony is that plaintiff did not himself "keep" time. Rather, he conveyed the information concerning the time spent on various jobs to a general foreman, who was responsible for drafting and maintaining the time records. Further, it is uncontroverted that plaintiff played no role in making work schedules. Finally, the Secretary has not indicated how any skills which plaintiff might possess by virtue of his specific employment experience would be transferrable to the job of "maintenance dispatcher." This job proposal, like the others, was based on the average skill profile of workers nationwide who hold the positions of construction foremen and union steward, positions which, as discussed above, plaintiff did not hold. Finally, there is a complete absence of proof needed to make a connection as to how the acknowledged skills—directing and supervising, and knowledge of the tools and equipment in his trade—would in any way be helpful to the three proposed jobs;[5] in fact, the vocational expert did not appear to base his initial opinion as to the three jobs to which plaintiff could transfer his skills on these acknowledged skills.[6]

Note that neither the ALJ's report nor the vocational expert's testimony seemed to find any transferrable skills based on plaintiff's short-lived dabbling in insurance sales. This is appropriate under 20 C.F.R. § 404.1574(a)(1).

As discussed above, the substantial evidence standard is exceptionally deferential; however, it is not toothless. While the second ALJ report does, it appears, address the concerns that this court had in remanding the case, its findings with respect to the transferability of plaintiff's skills are not supported by substantial evidence for several reasons.

The ALJ found that plaintiff reached and surpassed the fourth step of the sequential analysis process. At that point, the burden shifted to the Secretary to show the existence of work in the national economy which plaintiff can perform. It was the Secretary's affirmative burden to link up plaintiff's skills with the proposed jobs. The skills must be based on plaintiff's own personal experiences. 20 C.F.R. § 404.1565; *Epps v. Harris,* 624 F.2d 1267, 1274 (5th Cir.1980); *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir.1980); *Taylor v. Weinberger,* 512 F.2d 664, 668 (4th Cir.1975); *Watson v. Secretary HEW,* 478 F.Supp. 394, 397–98 (N.D.Tex.1979).

It therefore follows that the Secretary may not rely solely on national "averages." No evidence specifically contradicts plaintiff's testimony about his work roles and the skills he acquired. The Secretary made no attempt to link up plaintiff's acknowledged skills with any alternate jobs. The only possible trait which might be relevant to the proposed jobs was that of report writing. Yet, the only indication that plaintiff was involved in report writing appeared in the

4. Such an assumption is proper in light of the fact that there is no conflicting evidence concerning the scope of plaintiff's jobs.

5. Nor was there testimony indicating any other jobs to which these skills would be transferrable.

6. At least this is the inescapable conclusion from the vocational expert's statement that if the job descriptions were truly as plaintiff claimed, then these jobs would no longer be appropriate for him. (Tr. 52).

initial benefit application, and that evidence was severely compromised by plaintiff's testimony. Even assuming that plaintiff does possess the ability to write reports, the vocational expert did not testify that this skill, in combination with the acknowledged skills, would be adequate for the proposed jobs. As discussed above, plaintiff lacks other skills crucial for those jobs. Finally, it should be repeated that when a plaintiff is of advanced age, the demonstration of transferability must be all the more convincing. For these reasons, there does not exist substantial evidence to uphold the ALJ's decision on non-disability.

## V. Recommendation

The decision of the Secretary should be reversed.

## VI. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).