DECISION
Before the Court is an appeal by appellant Marie Almonte from a decision of the Rhode Island Department of Human Services ("DHS") that denied her application for medical assistance benefits. For the reasons set forth in this decision, this Court reverses the decision of DHS and remands this case to DHS for an award of medical assistance benefits to appellant Almonte, together with attorneys' fees and costs.
 Facts/Travel
The Rhode Island Department of Human Services is an agency within the executive branch of state government that is responsible for the management of the medical assistance program. The state statute governing the provision of medical assistance benefits states:
 it is declared to be the policy of this state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provisions of R.I. Gen. Laws § 40-5.1-9 or 40-6-27, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice.
R.I. Gen. Laws § 40-8-1(c). To receive federal funding, DHS must pay medical assistance benefits to all eligible individuals according to the regulations established by the federal Social Security Act. It is pursuant to this public assistance program that appellant, Marie Almonte, sought benefits in this case.
Marie Almonte is a sixty-one year-old woman with a second grade education. She cannot read or write English. (Exh. 7C). She was employed as a machine operator for twelve years — a job that required her to sit for eight hours per day. (Exh. 7C). In 1999, back pain caused appellant Almonte to stop working, and she subsequently applied for benefits under the medical assistance program in June 2001.
Appellant Almonte's medical record demonstrates that she suffers from persistent spinal problems. X-rays of her cervical spine taken in 1998 reveal severe degenerative disease in her lower cervical spine, with marked degenerative disease of the cervical vertebrae located at C4-C7. (Exh 8A).
Dr. Collins, who has served as appellant Almonte's treating physician since September 1998, completed DHS's MA-63 form and found that Ms. Almonte suffers from consistent chronic back pain and degenerative joint disease of the cervical and thoracic spine. (Exhs. 7B and 8E). He concluded that her impairment is expected to last at least twelve months and that she has only a fair prognosis for eliminating or reducing her conditions through medication or treatment. (Exh. 8G). He determined that appellant Almonte's condition limited her physical activity. Id. According to Dr. Collins, she can walk for a maximum of two to three hours per day, sit for two to three hours per day, stand for one to two hours per day, reach for one to two hours per day, and sit or stand intermittently (with breaks) for a maximum of two to three hours per day. She cannot lift and carry more than ten pounds. (Exh. 7B). Dr. Collins diagnosed appellant Almonte as suffering from "chronic shoulder and back pain not helped by medicine." (Exh. 7B). He recommended occupational therapy, physical therapy and breast reduction surgery, but appellant Almonte has been unable to try to alleviate her condition because she is unable to afford the recommended treatment. (Tr. at 17). According to Dr. Collins, her impairments "significantly limit" her physical ability to do work activities and she is unable to sustain full time employment. (Exh. 8G). He noted that her pain, which is "moderate to severe," has not responded to conservative treatment (including medication) and that she is unable to afford the recommended treatment. Id. Dr. Collins found that her pain is of such severity as to preclude the concentration and productivity that is necessary to sustain work. Id.
From October 1999 to February 2000, appellant Almonte received chiropractic treatment from Dr. Kerry Kasegian-Langley. Her medical records document his persistent findings of decreased cervical range of motion, including paraspinal spasm and other muscle spasm, and mid-thoracic and cervical tenderness on palpation. (Exh. 7D). Moreover, Dr. Kasegian-Langley observed that appellant Almonte suffers from decreased cervical extension and guarded range of motion. Id.
Dr. Bernado reviewed appellant Almonte's medical records to determine her residual functional capacity for the Social Security Administration. He concluded that she she suffers from chronic back pain, characterized by severe degenerative disease in the lower cervical spine. (Exh. 8A). He found decreased cervical range of motion by 50% and severe restriction of range of motion in her right shoulder. Id. He also found tenderness by palpation in her cervical and thoracic spine. Id. He concluded that Ms. Almonte can lift up to twenty pounds, stand or walk for six hours out of eight and sit for eight hours out of eight. Id. He found her symptoms to be attributable to a medically determinable impairment, that the severity and duration of the symptoms were not disproportionate to the expected severity or duration on the basis of the impairment and that the severity of the symptoms and the effect on function were consistent with the medical and nonmedical evidence, including statements by the claimant and others, observations regarding her activities of daily living and alterations of her of usual behavior. Id.
Appellant Almonte applied for medical assistance benefits from DHS in June 2000. The Medical Assistance Review Team ("MART") from DHS denied her application for benefits on August 23, 2000. At the time, MART had no X-rays for appellant Almonte nor did it have any physician's reports indicating objective medical evidence to support her subjective symptoms or any records suggesting that her chronic back pain was severe. She appealed from that decision and sought an administrative hearing before a DHS Appeals Officer.
At the administrative hearing on January 10, 2001, appellant Almonte testified that she filed an application for medical assistance benefits because "I'm sick. I can't work. I can't do anything." (Tr. at 14). When asked to describe her back pain, she stated "Pain. Complete pain. I cannot sleep. If I turn on my side, I can't sleep, and if I sleep with my face down, I can't sleep either." Id. She claimed that she sleeps about an hour per night. Id. at 17. When asked to describe her shoulder pain, she stated "Everything hurts. Everything from the top to like the nerves-something wrong with this arm." Id. at 15. She stated that she could not lift her arms at all before the pain appears. Id. Ms. Almonte takes Motrin and a high dosage of Vioxx. Id. at 17.
Appellant Almonte testified further that she cannot work, that she cannot bend or reach above her head and that she can stand for only one or two hours. Id. at 18. She stated that she can sit for only one or two hours and walk slowly for one or two hours. Id. at 19. She indicated that she does no household chores except making beds. (Exh. 7C). She drives a car but also needs help getting places. Id. She also needs help with food preparation. Id. Ms. Almonte testified that she cannot obtain occupational therapy because she cannot afford it. (Tr. at 17).
Following the hearing, the Hearing Officer gave MART seven days to review appellant Almonte's X-rays and the additional medical records submitted on her behalf that it had not reviewed at the time it denied her request for benefits in August 2000. (Tr. at 22). DHS never ordered any consultative examinations of Ms. Almonte, ostensibly because of time constraints. Id. Although appellant Almonte had such an examination as part of her evaluation for social security disability, DHS did not obtain a copy of that evaluation before the administrative hearing in January 2001. Counsel for Ms. Almonte objected at the hearing to expanding the record after the fact to include that evaluation, and the Hearing Officer sustained that objection. Id. at 25.
Following the administrative hearing, MART reviewed appellant Almonte's X-rays. (Exh. 11). It is unclear what medical records it reviewed from August 2000 through January 2001. MART issued its decision finding appellant Almonte "not disabled" on January 17, 2001. Id. It noted in its decision, after reviewing the X-rays, that she had chronic neck and back pain and decreased range of motion and tenderness. Id.
On January 30, 2001, the Hearing Officer issued her decision denying appellant Almonte's request for medical assistance benefits. (Exh. 12). She found that pain would not interfere with appellant Almonte's ability to sustain work activity. Id. In this regard, the Hearing Officer noted that "the appellant stood in the waiting area without apparent difficulty, walked to the hearing room and sat through the proceeding with no observable indication of distress." Id. She thought that the information from appellant Almonte's treating physician regarding her pain was contradicted by his assessment of her mental abilities on the MA-63 form that could not be reconciled with further medical evaluations in the record. Id.
The Hearing Officer noted, based on her reading of the opinion of appellant Almonte's treating physician, that Ms. Almonte "can walk and sit for 2-3 hours, stand for 1-2 hours, bend for an hour, stand and sit intermittently for 2-3 hours, and bend, lift and carry up to ten pounds occasionally." Id. She noted that the record indicated an additional limitation restricting overhead lifting and carrying. Id. The Hearing Officer concluded that appellant Almonte could not return to her previous job as a machine operator (where she worked for twelve years at a job that required her to sit for eight hours per day). Id. Nonetheless, the Hearing Officer found that "she would be able to perform sedentary work which requires lifting no more than ten pounds, standing and walking about two hours, and sitting for a total of six (the appellant can stand and sit intermittently) as these are all within the capabilities described by her treating physician." Id. Finally, the Hearing Officer opined that "[h]er long work history would suggest she has the transferable skills which would overcome her lack of formal education and age." Id.
Appellant Almonte filed a timely appeal to this Court from the DHS Hearing Officer's decision. She argues that the Hearing Officer erred in improperly rejecting the opinion of her treating physician, giving improper weight to the Hearing Officer's own limited personal observations of the appellant in contrast to the expert opinion evidence in this case, giving insufficient weight to the medical evidence and other testimony regarding the appellant's pain and in determining her residual functional capacity to do sedentary work. Appellant Almonte seeks a reversal of the Hearing Officer's decision and attorneys' fees.
DHS counters that the Hearing Officer does not have to give the treating physician's opinion controlling weight and that the Hearing Officer can make her own credibility findings as to the appellant. It argues that the Hearing Officer's decision was substantially justified such that any attorneys' fee request must be denied. DHS seeks to have the Hearing Officer's decision affirmed.
 Standard of Review
The scope of this Court's review of administrative decisions is confined by R.I. Gen. Laws § 42-35-15(g). That statute provides:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other errors of law;
 (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
On review, this Court does not weigh the evidence upon which the agency's findings of fact are based, but reviews the record to determine if there is substantial evidence to support the administrative decision.Bunch v. Board of Review, Rhode Island Dept. of Employment and Training,690 A.2d 335, 337 (R.I. 1997); St. Pius X Parish Corp. v. Murray,557 A.2d 1214, 1218 (R.I. 1989); Newport Shipyard v. Rhode IslandCommission for Human Rights, 484 A.2d 893, 897 (R.I. 1984). `"Substantial evidence' is that which a reasonable mind might accept to support a conclusion." Newport Shipyard, 484 A.2d 897 (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court is precluded from "substituting its judgment for that of the agency in regard to credibility of witnesses or to the weight of the evidence concerning questions of fact." Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal ResourceManagement Council, 434 A.2d 266, 272 (R.I. 1981).
 Standard Used to Determine Disability
Because the medical assistance program is a product of the federal Social Security Act and is administered by the federal government,42 U.S.C. § 1396 et. seq., DHS is obligated to adopt the definitions and guidelines established by the federal government to administer that program. Under federal law and the regulations promulgated thereunder, an individual is eligible for medical assistance benefits if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than twelve months.42 U.S.C. § 1382(c)(a)(3); DHS Regulations § 0352. The federal guidelines set forth a five-step sequential evaluation to determine whether an individual is disabled:
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; see also Brown v. Yuckert, 482 U.S. 137, 141-43 (1987). In applying this five-step evaluation, once the Hearing Officer reaches a negative answer to any of the questions, except step three, the Hearing Officer must reach a determination of not disabled.McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).
Under step one of the regulations, the hearing officer considers whether the claimant is engaged in substantial activity. If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140, 107 S.Ct 2287, 2290-91, 96 L.Ed.2d 119, 127 (1987). Next, in step two, the hearing officer must determine whether the claimant is suffering from a severe impairment.20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits. If a severe impairment is found, the hearing officer proceeds to step three to determine whether the claimant's impairments meet or equal one of the listed impairments set forth in 20 C.F.R. Pt. 404 subpt. P, app. 1. § 200 (2001). If the answer to that question is yes, the claimant is conclusively presumed to be disabled. If the answer is no, the hearing officer moves to step four to determine if the claimant can perform past relevant work despite the severe impairment.
If the claimant is not able to perform past relevant work, the hearing officer must proceed to step five. Holley v. Chater, 931 F. Supp. 840, 844 (S.D.Fla. 1996). At step five, the burden shifts to DHS to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999). To make such a finding, the hearing officer can rely on a vocational expert or use the vocational guidelines. Id. If the hearing officer fails to take vocational testimony, the hearing officer is deemed to have relied exclusively on the "Grid" to show the existence of jobs the claimant could perform. Ortiz v. The Secretary of Health Human Serv.,890 F.2d 520, 524 (1st Cir. 1989).
The medical vocational guidelines, referred to as the "Grid," establish a matrix system that categorizes disabling conditions based on the claimant's age, education and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(a) (2001). The purpose of the Grid is to encourage uniform treatment of claims. The Grid is meant to reflect the potential occupational base remaining for a claimant in light of his or her physical limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200(c) (2001). If the claimant suffers only from an exertional limitation, otherwise known as a strength-related impairment, then the Grid reveals whether the claimant is disabled. Ortiz, 890 F.2d at 524. If, under the Grid, the claimant's condition results in a finding of disabled, then the hearing officer has no discretion, but must find the claimant disabled.Id.; Cooper v. Sullivan, 880 F.2d 1152, 1156 (9th Cir. 1989).
When the claimant is over 55 years of age, and can no longer perform vocationally relevant past work, as in this case, then the relevant section of the Grid provides that the hearing officer must find that the claimant has transferable skills that allow for direct entry into skilled sedentary work in order for the hearing officer to conclude that the claimant is capable of engaging in substantial gainful employment. 20 C.F.R. Pt. 4, Subpt. P, App. 2, § 201.01(d). Thus, when a claimant is over 55 years of age and can no longer perform relevant past work, DHS has a more difficult burden to show that the claimant can perform substantial gainful employment at step five of the analysis.
 Application of the Grid
In applying the five-step sequential evaluation in this case, the Hearing Officer implicitly found that appellant Almonte satisfied the criteria for disability under the first four steps contained in the evaluation process under federal law because she concluded that the appellant was "not disabled" at step-five of the sequential evaluation.McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986) (if the hearing officer reaches a negative answer to any of the questions (other than step three), the hearing officer must reach a determination of not disabled). Having found appellant Almonte presumptively disabled through step four of the equation, the burden shifted to DHS at step five to show that the claimant could perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1560(b)(3).
There were two ways for DHS to meet this burden: (1) by the testimony of a vocational expert, or (2) by reference to the Grid. Since no vocational expert testified at the hearing, the Hearing Officer is presumed to have applied the "Grid." Individuals who meet the criteria of the Grid are presumed disabled unless the presumption of disability is rebutted by a showing that the individual has skills that are directly transferable to sedentary work. Jeffcoat v. Secretary of Health HumanServ., 910 F.Supp. 1187, 1194 (E.D. Tx. 1995). In making this finding regarding transferable skills, the Hearing Officer may not conclude that skills are transferable based on aptitudes common to most persons. Id.
Because appellant Almonte is over the age of fifty-five and could not return to her past employment, the Hearing Officer only could have concluded that Ms. Almonte was not disabled if DHS found that Ms. Almonte had transferable skills allowing direct entry into skilled sedentary work. Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001) (stating that when a hearing officer makes a finding that a claimant has transferable skills, the hearing officer must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable). The record, however, does not support that conclusion.
According to the regulations, transferable skills are most meaningful among jobs where: 1) the same or lesser degree of skill is required; 2) the same or similar tools and machines are used; and 3) the same or similar raw materials, products, processes or services are involved.20 C.F.R. § 404.1568 (d)(2). For individuals of advanced age, over 55, the regulations state that "we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work product, work setting or the industry." Id.
Significantly, the Hearing Officer in this case never made any findings indicating that appellant Almonte's limited education, inability to read or write English and employment as a machine operator gave her the necessary skills to transfer, at age 61, to sedentary work. Her job as a machine operator required her to sit for eight hours per day. (Exh. 7C.) The Hearing Officer acknowledged that appellant Almonte can no longer sit for eight hours per day and suggested that, at most, she could sit and stand intermittently for six hours per day. The Hearing Officer's decision assumes-without setting forth any factual predicate-that appellant Almonte must have the transferable skills needed to perform sedentary work due to her prior work experience. As the Grid mandates a presumptive finding of disabled, the Hearing Officer was required to make findings of fact, based on the evidence, to rebut the presumption that appellant Almonte was not disabled because she possessed skills directly transferable to sedentary work. The Hearing Officer's failure to make specific findings indicating how appellant Almonte has transferable skills allowing direct entry into sedentary work constituted error of law at step five of the sequential evaluation. See Dikeman, 245 F.3d at 1185. There is simply a dearth of evidence in the record to support a finding of transferable skills.
 Residual Functional Capacity
Even assuming that the Hearing Officer did not err in making that determination, appellant Almonte argues that the Hearing Officer's conclusion that she had the residual functional capacity to perform sedentary work is not supported by the substantial evidence of record. The Hearing Officer's conclusion in that regard is belied by the opinion of Dr. Collins, appellant Almonte's treating physician, and the Hearing Officer articulated no reason for rejecting that opinion. Here, in denying appellant Almonte's claim for disability benefits, the Hearing Officer concluded as follows:
 Ms. Almonte would be able to perform sedentary work which requires lifting no more than ten pounds, standing and walking about two hours and sitting for a total of six (the appellant can sit and stand intermittently) as these are all within the capabilities described by her treating physician. (Exh.12).
Sedentary work requires the physical capacity to sit approximately for six hours out of an eight hour workday and to stand or walk no more than the remaining two hours. 20 C.F.R. § 404.967(a); SSR No. 83-10;Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999) (emphasizing that to perform "the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day.) The First Circuit has asserted that "the inability to remain seated may constitute an exertional impairment which significantly erodes the occupational base for sedentary work and requires use of additional vocational resources."Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999); see also, Desrosiersv. Rhode Island Department of Human Services, C.A. No. 01-1578 (Super.Ct.) (March 1, 2002) (Nugent, J.) (reversing decision of DHS hearing officer because substantial evidence did not support the hearing officer's conclusion that the claimant could perform sedentary work).
Appellant Almonte's treating physician, Dr. Collins, opined that Ms. Almonte cannot satisfy the physical requirements of sedentary work, namely sitting for six hours in an eight hour day. The Hearing Officer concluded — contrary to this opinion — that appellant Almonte could perform sedentary work.
If the Hearing Officer rejects the opinion of the treating physician, specific reasons must be given by the Hearing Officer for doing so.20 C.F.R. § 416.927(d)(2) (2001) (providing that the agency "will always give a good reason in our notice of determination or decision for the weight we give your treating source's opinion"). Here, the Hearing Officer stated that she accepted the opinion of Dr. Collins, the treating physician, but then failed to state that opinion correctly. Even assuming that the Hearing Officer instead rejected his opinion, she failed to indicate her rationale.
The Hearing Officer also appeared to rely improperly on her own personal observations of Ms. Almonte's medical condition during the administrative hearing. "A hearing officer is permitted to take notice of a claimant's demeanor during an administrative hearing, however the [hearing officer] is not free to reject a claimant's credibility on the account of the claimant's failure to sit and squirm during the hearing."Cline v. Sullivan, 939 F.2d 560, 568 (8th Cir. 1991). In this case, the Hearing Officer's apparent reliance on her own personal observations of appellant Almonte's ability to sit or stand comfortably during the administrative hearing does not constitute evidence that the Hearing Officer is entitled to rely upon where there is substantial contrary medical evidence. Accordingly, substantial evidence does not exist in the record to support the Hearing Officer's conclusion that, at step five of the sequential evaluation, appellant Almonte could perform other sedentary work in the national economy.
In addition to improperly applying the five step process mandated by federal law for determining disability status, the Hearing Officer failed to follow the federal regulations in evaluating appellant Almonte's subjective complaints of pain that are documented in the medical records and described by Ms. Almonte at her administrative hearing. Under20 C.F.R. § 416.929, the Hearing Officer is required to provide specific reasons for discounting a claimant's subjective complaints of pain. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (a hearing officer who rejects subjective complaints of pain must make an express credibility determination explaining the reasons for discrediting the complaints). Here, the Hearing Officer failed to properly consider Ms. Almonte's subjective complaints of pain which were consistent with the substantial medical evidence in the record and supported her claim of disability.
 Conclusion
After reviewing the entire record, this Court finds that the Hearing Officer's decision is not supported by the reliable, probative and substantial evidence of record and is infected by errors of law. Here, the record is devoid of substantial evidence that would sustain the burden of DHS to show that Ms. Almonte has transferable skills that would allow direct entry into skilled sedentary work. Since Ms. Almonte has shown by the clear weight of the evidence that she cannot engage in substantial gainful employment, she satisfies the eligibility requirements of the medical assistance program under R.I. Gen. Laws § 40-8-1(c) and is entitled to receive medical assistance benefits.
Furthermore, it is the opinion of this Court that it would be improper to remand this case to DHS for further proceedings as it would simply delay the receipt of benefits by appellant Almonte. Macera v. Cerra, No. 2000-80-A., slip op. at 7 (R.I., filed February 8, 2002) (refusing to remand when further factfinding is unnecessary and would serve no useful purpose); Desrosiers v. Rhode Island Department of Human Services, C. A. No. 01-1578 (Super.Ct.) (March 1, 2002) (Nugent, J.); Randall v.Sullivan, 956 F.2d 105 (5th Cir. 1992). Accordingly, the decision of DHS is reversed, and this matter is remanded to DHS for an award of medical assistance benefits to appellant Almonte, consistent with this decision.
Additionally, pursuant to R.I. Gen. Laws § 42-92-1, et seq.,
appellant Almonte seeks attorney's fees. Under Rhode Island law, a claimant is entitled to recover reasonable attorney's fees if it is deemed to be the prevailing party, unless the position of the agency is substantially justified. R.I. Gen. Laws § 42-92-3. To prove substantial justification, the agency has the burden to show that its position was at least clearly reasonable, well-founded in law and fact, and solid though not necessarily correct. Taft v. Pare, 536 A.2d 888, 893 (R.I. 1988.) Since this Court finds the DHS decision to be unreasonable and not well-founded in law or fact in view of the competent evidence contained in the record and presented before it, an award of costs and attorney's fees to appellant Almonte is justified. Accordingly, this Court reverses the decision of DHS and awards costs and attorney's fees to appellant Almonte to be paid by DHS pursuant to R.I. Gen. Laws §42-92-3.
Counsel shall agree upon an appropriate form of order and judgment, reflective of this decision, and submit it to the Court forthwith for entry.