United States Court of Appeals,

Fifth Circuit.

No. 93-9001.

Gabriel G. TORRES, Plaintiff-Appellant,

v.

Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.

March 30, 1995.

Appeal from the United States District Court for the Northern
District of Texas.

Before JONES, DUHÉ and STEWART, Circuit Judges.

DUHÉ, Circuit Judge:

Gabriel Torres (Appellant), appeals from the district court's
dismissal of his action for judicial review of the Social Security
Administration's (Secretary) denial of his request for
reconsideration and for a hearing before an Administrative Law
Judge (ALJ) on his application for disability insurance benefits
(DIB). We affirm.

I. BACKGROUND

Appellant sustained gunshot wounds to his left hip and abdomen
in 1969, while serving in the United States Army during the Vietnam
conflict. Immediately after he was wounded, he underwent a series
of operations. Appellant underwent additional hip surgery in 1975,
1979 and 1985. Despite these surgeries, Appellant's left leg
remains approximately 3 cm shorter than his right leg, he has
restricted motion in his lumbar spine and left hip and continues to
suffer pain and discomfort.

1

Appellant was employed, for short periods of time, after returning from Vietnam. Appellant worked as a hospital orderly in 1973-74, and as a detailer for a car dealer in 1974-75. Appellant apparently left his job as a detailer in 1975 after sustaining a fractured hip as a result of an on the job injury.[1] There is no dispute that Appellant has not worked since 1975,[2] and that Appellant was last eligible for disability insurance benefits on March 31, 1985.[3] Therefore, Appellant must show that he was disabled as of that date. Appellant initially applied for social security DIB in 1975.[4] He was found to be disabled as of November 10, 1976. Appellant received benefits until March 31, 1983, when, after a review of recent medical evidence, the Secretary determined Appellant was no longer disabled. Appellant did not appeal this determination.

Appellant filed his second application for DIB in September 1986. An ALJ held a hearing and determined that Appellant was not

---

[1]The 1975 surgery was apparently necessitated by Appellant's on the job injury. The record does not clearly disclose what role Appellant's gunshot wounds played in the cause or extent of this injury.

[2]Appellant apparently enrolled in, but did not complete, a training program for watch repair and a training program for lens grinding.

[3]Determination of eligibility for DIB has two primary components. *See* 42 U.S.C. § 423. Appellant must meet the DIB earnings requirement set out in 42 U.S.C. § 423(c)(1), *and* must be under a disability as defined by 42 U.S.C. § 423(d).

[4]Appellant seeks only Title II benefits (disability insurance), under 42 U.S.C. § 401 *et seq.* Appellant apparently does not seek Supplemental Security Income (SSI) benefits under Title XVI because his veteran's disability benefits place him above the financial cut-off for SSI.

disabled because he could perform sedentary work and had a favorable vocational profile.[5]  The written decision of the ALJ sets forth a detailed review of Appellant's extensive medical history and complaints.  The ALJ concluded "claimant has the residual functional capacity to perform the full range of sedentary work....  [therefore,] considering the claimant's residual functional capacity, age, education, and work experience, he is not disabled."  After considering additional medical evidence, the Appeals Council denied Appellant's request for review.  Appellant did not seek judicial review of the decision.

Appellant filed his third application for DIB in December 1989, alleging disability onset in 1975.  He supported this application with new medical evidence, including reports from two doctors delineating the progress of his disability since the 1988 decision.  However, as mentioned above, Appellant's insured status expired on March 31, 1985 and therefore he was required to show disability prior to that date.  Because his date of eligibility preceded his second application for DIB, the ALJ treated Appellant's application as a request for reopening of the 1988 decision.  The ALJ enlisted the aid of a medical expert, and forwarded the exhibits from the 1988 record and the new exhibits to him for evaluation.  After reviewing the expert's report, the ALJ concluded that the new evidence "does not show considerable changes or progression of the claimant's condition since it was reviewed in

---

[5]The profile was based on Appellant's age, 37, and the fact that he held a high school equivalency certificate (GED).

1988. Therefore, the new evidence is not material and does not warrant any revision of" the 1988 decision. The ALJ applied *res judicata* and dismissed Appellant's request for a hearing.

Appellant then sought judicial review and the matter was referred to the magistrate judge who concluded the court lacked jurisdiction because the Secretary denied benefits on *res judicata* grounds, and Appellant had failed to raise a colorable constitutional claim. The district court adopted the findings, conclusions and recommendations of the magistrate, and dismissed the action without prejudice. Appellant timely appealed to this Court.

## II. JURISDICTION

The starting point in our analysis must be an examination of the court's jurisdiction of an appeal from the Secretary's denial of a request to reopen a denied application for DIB. The statutory scheme specifically provides for judicial review of the initial administrative determination. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, the statute does not provide for judicial review of the Secretary's denial of a request to reopen a claim. The Supreme Court has found no independent jurisdictional foundation which would provide for review of such denial. *See id.* at 108-09, 97 S.Ct. at 985-86. Thus, federal court review of the Secretary's denial of a motion to reopen a claim lies only where a colorable constitutional question is at issue. *Id.* at 109, 97 S.Ct. at 986.

Appellant raises three issues on appeal which he claims

4

constitute colorable constitutional questions.  First, Appellant claims that he was denied due process because the Secretary settled a class action suit, but limited the application of the settlement to residents of New York.  Second, Appellant contends that the language of the denial notices he received in conjunction with his second application violated his right to due process because they implied that he would have the right to refile an application at any time regardless of whether he appealed the Secretary's denial of his application.  Finally, Appellant contends that the use of *res judicata* violated his right to due process.  We shall address these arguments seriatim.

## III. THE *STIEBERGER* SETTLEMENT

Appellant's first argument is that he was denied due process because the Secretary has treated him differently than similarly situated residents of New York.  This disparity in treatment allegedly arose as a result of the Secretary's settlement of *Stieberger v. Sullivan*.[6]  In compromise of the *Stieberger* litigation, the Secretary agreed to reopen and review *de novo* the previously denied applications for Social Security benefits of a class defined as:

> All New York residents whose claims for benefits or continuation of benefits have been, or will be denied or terminated since October 1, 1981, based on a determination that they do not have a disability that prevents them from

---

[6]The district court's decisions on motions for summary judgment in this matter are reported at 615 F.Supp. 1315 (S.D.N.Y.1985) and 738 F.Supp. 716 (S.D.N.Y.1990).  The settlement agreement at issue is reported at 792 F.Supp. 1376 (S.D.N.Y.1992) and modified in part at 801 F.Supp. 1079 (S.D.N.Y.1992).

5

engaging in substantial gainful activity and whose benefits have not been granted or restored through subsequent appeals.

*Stieberger,* 792 F.Supp. at 1377. Appellant alleges, and Appellee conceded at oral argument, that Torres satisfies all of the criteria for class membership except New York residency.

It is long settled that although the Fifth Amendment does not contain a counterpart to the Fourteenth Amendment's right to equal protection, "equal protection" and "due process" are not mutually exclusive. Therefore, a discriminatory application of law by the federal government, where unjustifiable, can constitute a denial of due process. *See Bolling v. Sharpe,* 347 U.S. 497, 498-99, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 173 n. 8, 101 S.Ct. 453, 458 n. 8, 66 L.Ed.2d 368 (1980),

> Although "the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process.' " Thus, if a federal statute is valid under the equal protection component of the Fifth Amendment, it is perforce valid under the Due Process Clause of that Amendment.

(citations omitted). We employ the same test to evaluate the alleged violation of the equal protection component of the Fifth Amendment as we would to evaluate an alleged violation of the Fourteenth Amendment's Equal Protection Clause. *See e.g., Bowen v. Gilliard,* 483 U.S. 587, 598-601, 107 S.Ct. 3008, 3015-17, 97 L.Ed.2d 485 (1987). Generally, unless governmental classifications affect a fundamental right, they need only "bear a rational relation to a legitimate governmental purpose." *See Regan v. Taxation With Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997,

6

2001, 76 L.Ed.2d 129 (1983). The parameters of "rational basis" review are well settled.

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

*Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

In the present case, the rational basis for the settlement's geographic limitation is clear.[7] The settlement was intended to recompense only those persons who had been harmed. The *Stieberger* plaintiffs contended they suffered harm from certain policies of the Secretary. However, actual harm occurred because of the way those policies were *implemented.* Because the improper implementation of the policies was geographically limited, the settlement was also geographically limited.

Specifically, the original *Stieberger* plaintiffs, Theresa

---

[7]Appellant cites *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) for the proposition that class actions involving governmental policy should be nationwide in scope. We do not read *Yamasaki* for that proposition, and, in fact, note that the Supreme Court advised federal courts to exercise caution before certifying a nationwide class. *See id.* at 702, 99 S.Ct. at 2558 ("[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts.").

7

Stieberger and the City of New York,

> challenge[d] two policies implemented by the United States Department of Health and Human Services ("HHS") and the Social Security Administration ("SSA"): "non-acquiescence" and "Bellmon Review." "Non-acquiescence" is the agency's alleged policy of adjudicating claims without implementing the holdings in decisions of United States Court of Appeal. Bellmon review is the agency's policy pursuant to which the decisions of Administrative Law Judges ("ALJs"), who had rendered a high percentage of pro-claimant determinations in disability benefits cases, were subject to agency-initiated review. Plaintiffs mov[ed] for full summary judgment but address[ed] only the non-acquiescence issue on the theory that they would be entitled to the same relief if they prevailed on one or both issues.

*Stieberger v. Sullivan,* 738 F.Supp. at 722. The *Stieberger* plaintiffs alleged non-acquiescence in thirteen Second Circuit holdings. The district court found that the policy of non-acquiescence was unlawful, but granted summary judgment in only four of the thirteen claims. Summary judgment on three other claims was denied without prejudice, and summary judgment was denied with prejudice on the final six claims. *See id.* at 758-59. The Secretary elected to settle the matter rather than proceeding to trial on the remaining claims.

As stated previously, the *Stieberger* class suffered harm as a result of the implementation of the policies, not as a result of the policies themselves. In other words, the district court found harm only where a specific Second Circuit precedent was not applied. The settlement agreement was intended to compensate persons who were harmed because of the Secretary's failure to correctly apply these Second Circuit precedents. Therefore, assuming, *ad arguendo,* that non-acquiescence is unlawful, to prove a violation of due process Appellant must show that he, like the

8

*Stieberger* class, was harmed by the Secretary's failure to apply Second Circuit precedent. Because Second Circuit precedent is not binding in this jurisdiction, Appellant can show no harm. In fact, Appellant fails to show non-acquiescence in *any* relevant precedent,[8] and therefore fails to show any due process violation resulting from his exclusion from the settlement agreement.

Appellant also argues that the scope of the settlement is broader than the alleged harm because the right to reopen was not specifically limited to those persons whose claims were denied as a result of the Secretary's non-acquiescence. Therefore, Appellant contends that the settlement lacks a rational relationship to the harm alleged. Appellant's argument assumes too much. We must bear in mind that, as stated by the district court, the settlement is a compromise intended to establish

> *"a reasonable balance,* especially bearing in mind the length of time that would elapse, absent a settlement, before any concrete benefits could be delivered to any class member and *the costs and complexity of implementing a settlement which followed literally the contours of the Court's liability determinations."*

*Stieberger v. Sullivan,* 792 F.Supp. at 1377 (emphasis supplied). While there may not be a one-to-one relationship between the harm suffered and the relief provided, it cannot be said that the scope of the settlement and the harm are not rationally related.

The fact that the Secretary found it more efficient to offer relief to a broad group of applicants rather than attempt to find

---

[8] In our only case on point, we found the evidence insufficient to show the Secretary was disregarding our precedents. *See Floyd v. Bowen,* 833 F.2d 529 (5th Cir.1987).

9

a method to discern which applicants had been actually harmed by the Secretary's non-acquiescence is of no moment to our analysis. The terms of the settlement agreement make clear that the purpose behind reopening the applications is to ensure that the Secretary properly applied Second Circuit precedent in evaluating the claims.[9] In other words, unless the applicant was in fact harmed by the failure to apply Second Circuit precedent, the Secretary will conclude that benefits were properly denied, and the applicant will gain absolutely no advantage from the relief provided by the settlement agreement. The terms of the settlement clearly bear a rational relationship to the harm alleged.

In summary, the plaintiffs in *Stieberger* demonstrated harm by proving to the satisfaction of the district court that the Secretary had engaged in non-acquiescence as to certain Second Circuit precedents. The Secretary chose to compromise the litigation rather than allowing the court to fashion a remedy. Because the harm proved was limited geographically, so also were the terms of the settlement geographically limited.[10] The geographic distinction is rationally based, and Appellant can show no violation of due process.

IV. NOTICE

---

[9]This purpose is further evidenced by the fact that persons whose claims have been judicially reviewed are *not* entitled to have their claims reopened except in one limited circumstance. *See Stieberger v. Sullivan,* 801 F.Supp. at 1089.

[10]*See Valtsakis v. Commissioner,* 801 F.2d 622, 624 (2nd Cir.1986) ("The existence of divergent results in different circuits ... does not amount to a violation of equal protection.").

Appellant next urges us to follow the Ninth Circuit's holding in *Gonzalez v. Sullivan.*[11]  In *Gonzalez,* the court found that the applicant had been denied his right to due process because of certain language in the Secretary's notice of adverse decision. Specifically, the notice stated,

> If you believe that this determination is not correct, you may request that your case be reexamined.  If you want this reconsideration, you must request it not later than 60 days from the date you receive this notice.  You may make your request through any social security office.  If additional evidence is available, you should submit it with your request. Please read the enclosed leaflet for a full explanation of your right to question the determination made on your claim.
>
> *If you do not request reconsideration of your case within the prescribed time period, you still have the right to file another application at any time.*

*Id.* at 1203 (emphasis added).  The Ninth Circuit determined that the underscored language mislead the applicant because it did "not clearly indicate that if no request for reconsideration is made, the determination is final."  *Id.*  The court found that the notice thereby violated the applicant's Fifth Amendment right to due process.

There is no dispute that, in conjunction with his second application for DIB, Appellant received a total of four adverse determination notices during various stages of the administrative process.  The first two notices contained language identical to that found unconstitutional in *Gonzalez.*  However, unlike the applicant in *Gonzalez,* Appellant continued through the administrative process.  After receiving the first notice,

---

[11]914 F.2d 1197 (9th Cir.1990).

Appellant filed a request for reconsideration. After the second notice, Appellant again exercised his right to appeal and requested a hearing on his application.

After hearing, Plaintiff received the third notice of the denial of his application. This notice, however, did not contain the language complained of in *Gonzalez,* but explicitly set out the process by which Appellant could ask for discretionary review by the Appeals Council. Appellant followed this process. Finally, Appellant was notified of the Appeals Council's denial of his request for review. Again, the notice explicitly set out the process by which Appellant could obtain judicial review of the denial of his application, but contained none of the language found unconstitutional in *Gonzalez.*

Whether the language contained in the first two notices violated due process is a matter of first impression in this Circuit. However, we need not reach this issue because we find that Appellant lacks standing to raise the due process claim. As set out recently by the Tenth Circuit, to show standing to raise a constitutional claim:

> First, the plaintiff must have suffered an invasion of a legally-protected interest that is "concrete and particularized," and "actual or imminent," not "conjectural or hypothetical." Second, there must be a causal connection between the injury and the complained of conduct; that is, the injury must be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"

*Gilbert v. Shalala,* 45 F.3d 1391, 1393 (10th Cir.1995) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119

12

L.Ed.2d 351 (1992)). Appellant has not shown any causal connection between the allegedly misleading language in the first two notices and his subsequent failure to seek judicial review. Appellant continued to appeal his denial of benefits, and did not stop until he reached the end of the administrative process.

To satisfy the causal connection requirement of *Defenders of Wildlife,* Appellant must show that he *relied on* the challenged language in the first two notices. *See Gilbert v. Shalala* at 1394; *Day v. Shalala,* 23 F.3d 1052, 1066 (6th Cir.1994); *Burks-Marshall v. Shalala,* 7 F.3d 1346, 1349 (8th Cir.1993). Appellant's claim that he *may* have sought judicial review but for the language in the first two notices is simply too attenuated to satisfy the causal connection requirement. Appellant exercised his right to appeal despite the language in the first two notices, and chose not to seek judicial review despite the fourth notice's detailed instructions. Appellant's retrospective speculation is insufficient to create standing.

## V. SUFFICIENCY OF THE RECORD

In his final constitutional claim, Appellant contends that application of *res judicata* to his December 1989 application for DIB violated due process for two reasons. First, Appellant contends that the 1989 application and the 1986 decision lack factual identity. Second, Appellant contends that the 1986 record was constitutionally inadequate to support the application of *res judicata* because the recording of the 1986 hearing was lost. These arguments are easily disposed.

13

Appellant's first argument represents a misapprehension of the doctrine of *res judicata.* If simply submitting new evidence rendered a prior decision factually distinct, *res judicata* would cease to exist, and the application process would continue *ad infinitum.* Appellant filed a new claim on the same medical problems, with the same onset date and alleging the same disability. The submission of additional medical reports to show a degeneration of his condition does not transform the application of *res judicata* into a violation of due process.[12]

Appellant's second argument is equally misplaced. In the primary case relied on by the Appellant, the Ninth Circuit determined that *res judicata* had been improperly applied where the record was "patently inadequate to support the findings [of] the ALJ." *Thompson v. Schweiker,* 665 F.2d 936, 941 (9th Cir.1982). In this case, there is no claim that the record is patently inadequate. Only the tape recording of the hearing was lost. The ALJ had the full benefit of all of the exhibits from the previous hearing, as well as new exhibits and testimony from the Appellant. In this case, Appellant has not demonstrated that loss of the recording affected the ability of the ALJ to render an informed decision, and no violation of due process has been proven.[13]

---

[12]In addition, as discussed above, Appellant's insured status expired as of March 31, 1985. Evidence showing the degeneration of his condition after that date was not relevant to the Secretary's analysis.

[13]*See, e.g., Cottrell v. Sullivan,* 987 F.2d 342, 345 (6th Cir.1992) (per curiam) ("[T]here is no constitutional requirement that the Appeals Council have a complete transcript before deciding whether to grant an application to reopen.").

## VI. CONCLUSION

Appellant has failed to raise a colorable constitutional claim, and therefore we are without jurisdiction to address his arguments on the merits of the denial to reopen. The decision of the district court is AFFIRMED.