Mary HOMAN

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION.

No. 9:97–CV–213.

United States District Court,
E.D. Texas,
Lufkin Division.

Feb. 17, 2000.

Thomas W. Deaton, Flournoy & Deaton, Lufkin, TX, for Mary Homan, plaintiff.

Steven MacArthur Mason, Asst U.S. Attorney, U.S. Attorney's Office, Tyler, TX, for Social Security Administration, defendant.

## MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HANNAH, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3) for judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

On June 10, 1997, plaintiff initiated this civil action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3), for judicial review of the Commissioner's decision denying her application for disability insurance benefits. The case was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of pending motions pursuant to 28 U.S.C. § 636(b). *See Mathews v. Weber,* 423 U.S. 261, 271–72, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

## NATURE OF CASE AND PROCEDURAL HISTORY

Plaintiff alleges disability due to diabetes mellitus and blindness. She filed a previous claim that was denied in 1990. The instant action exclusively concerns her second application for benefits filed on September 28, 1994, alleging inability to work since July 1, 1975.

Plaintiff's application was denied administratively on February 7, 1995, and again on April 25, 1995, upon reconsideration. A timely request for a hearing before an Administrative Law Judge ("ALJ") was filed. The hearing was conducted on February 12, 1996, and resulted in a finding dated June 26, 1996, that plaintiff was not entitled to benefits. The Appeals Council denied plaintiff's request for review on February 28, 1997; accordingly, the decision of the ALJ became the decision of the Commissioner.

Plaintiff timely sought judicial review in this Court. No issue of failure to exhaust administrative remedies having been raised by defendant, and none being ap-

parent from a review of the entire record, plaintiff has standing to pursue this action for judicial review of the ALJ's decision. *See Jeffcoat v. Secretary of HHS,* 910 F.Supp. 1187, 1191 (E.D.Tex.1995).

## APPLICABLE LEGAL STANDARDS

Plaintiff's application seeks two distinct types of disability benefits authorized under Title II of the Act. First, she seeks benefits that are available to persons who suffer all-encompassing disabilities, referred to hereafter as "ordinary" or "conventional" disability benefits. Second, she seeks benefits authorized for persons disabled due to a specific condition of blindness. For convenience hereafter, this type will be referred to as "statutory blindness" benefits.

### A. Eligibility for Benefits

Title 42 of the United States Code Section 423(a)(1) authorizes payments for both conventional and statutory blindness benefits. Specifically, Section 423(a)(1) provides:

Every individual who—

(A) Is insured for disability insurance benefits (as determined under subsection (c)(1) of this section),

(B) Has not attained retirement age as defined in section 416(*l*) of this title,

(C) Has filed application for disability insurance benefits, and

(D) Is under a disability (as defined in subsection (d) of this section),

shall be entitled to a disability insurance benefit . . .

42 U.S.C. § 423(a)(1).

■ Claimants for disability benefits shoulder the burden of proving their disability. *See Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir.1991). Their burden of proof is formidable, being viewed as "so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981). Thus, proof of the existence of a serious disease or impairment alone does not establish a disability within the meaning of the Act. To succeed, claimants must satisfy complex, technical, rigid, and idiosyncratic standards required under the Act and its implementing regulations.

Eligibility standards for ordinary or conventional disability benefits differ substantially from standards for statutory blindness benefits. For clarity, each is discussed separately:

### 1. Conventional Disability Benefits

■ Standards of eligibility for conventional disability insurance benefits are codified in 42 U.S.C. § 423(d)(1)(A), which defines disability as:

Inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

As this section clearly notes, a showing of general disability is insufficient; in addition, a claimant must prove inability to engage in any substantial gainful employment. *See Herridge v. Richardson,* 464 F.2d 198, 199 (5th Cir.1972).

A "physical or mental impairment" is an anatomical physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). An individual is under a conventional disability only if the impairment or impairments are of such severity that they not only prevent the successful performance of past work, but also, considering age, education and work experience, prevent the successful performance of any other work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

### 2. Statutory Blindness Benefits

Standards of eligibility for statutory blindness disability insurance benefits are codified in 42 U.S.C. § 423(d)(1)(B).[1] Stat-

---

1. Subsection (d)(1)(B) defines statutory blindness disability as:

utory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. *See* 20 C.F.R. § 404.1581. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less. *See id.* Additionally, blindness must meet the durational requirement of having lasted or expected to last at least twelve months pursuant to 20 C.F.R. § 404.1509. *See id.*

If a claimant meets the requirements to establish that she is statutorily blind, a period of disability may be established regardless of whether the claimant can do substantial gainful activity. *See* 20 C.F.R. § 404.1582. However, a claimant is not automatically entitled to receive disability insurance cash benefits even though blind. If the claimant is under age 55, she must again be unable to do any substantial gainful activity in order to be paid disability insurance cash benefits. *See id.*

For statutory blindness purposes, the "substantial gainful activity" test is different from the one applicable to claimants for conventional disability benefits. In evaluating work activity of blind people under the age of 55, the Commissioner "will evaluate the work [the claimant is] doing using the guides in paragraph (d) of this section to determine whether or not [the claimant's] work shows that [the claimant is] doing substantial gainful activity." 20 C.F.R. § 404.1584. Further, paragraph (d) of Section 404.1584 reads:

> *Evaluation of earnings.* The law provides a different earnings test for substantial gainful activity of people who are blind. We will not consider that you are able to engage in substantial gainful activity on the basis of earnings unless your monthly earnings average more than $334.00 in 1978; $375.00 in 1979;

In the case of an individual who has attained the age of 55 and is blind (within the meaning of "blindness" as defined in section 416(i)(1) of this title), inability by reason of such blindness to engage in substantial gainful activity requiring skills or

$417.00 in 1980; $459.00 in 1981; and $500.00 in 1982. (Sections 404.1574(a)(2), 404.1575(c) and 404.1576 are applicable in determining the amount of your earnings.) Thereafter, an increase in the substantial gainful activity amount will depend on increases in the cost of living. For work activity performed in taxable years before 1978, the earnings considered enough to show an ability to do substantial gainful activity are the same for blind people as for others.

20 C.F.R. § 404.1584(d). However, a "period of disability may not begin after you become 65 years old." 20 C.F.R. § 404.321.

### 3. Insured Status

There is yet another requirement. An applicant who satisfies either or both of the above standards of disability must demonstrate further that disability occurred *while the applicant was "insured."* Again, the standards for proving insured status differ, depending on the type of disability.

To be eligible for conventional disability insurance benefits, an individual must first be insured. *See* 42 U.S.C. § 423(a)(1)(A). An individual is insured if "he had not less than 20 quarters of coverage during the 40 quarter period which ends with the quarter in which such months occurred." 42 U.S.C. § 423(c)(1)(B). "Quarters of coverage" include quarters in which the applicant earned certain amount of wages or self-employment income. *See* 20 C.F.R. § 404.101(b) and §§ 404.140–404.146.

The provisions quoted above do not apply, however, to an individual who is blind. Thus, a claimant is "insured" with regard to statutory blindness benefits when the claimant has not less than:

> abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time.
> 42  U.S.C. § 423(d)(1)(B).

(1) One quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 (or, if later, the year in which he attained age 21) and before the year in which he died or (if earlier) the year in which he attained age 62, except that in no case shall an individual be a fully insured individual unless he has at least 6 quarters of coverage; or

(2) 40 quarters of coverage; or

(3) In the case of an individual who died before 1951, 6 quarters of coverage;

not counting as an elapsed year for purposes of paragraph (1) any year any part of which was included in a period of disability (as defined in section 416(i) of this title).

42 U.S.C. § 414(a).

## B. Administrative Determinations

To determine whether a claimant is entitled to disability benefits, the Commissioner must utilize a five-step sequential process. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). The five-step analysis follows:

1. Is the claimant currently engaged in substantial gainful activity?

2. Is the alleged impairment severe?

3. Does the claimant have an impairment or combination of impairments that meet or equal those listed in Appendix 1?

4. Does the impairment prevent the claimant from performing his past relevant work?

5. Does the impairment prevent the claimant from performing any other work?

20 C.F.R. § 404.1520(b)–(f).

The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *See Villa*, 895 F.2d at 1022.

## JUDICIAL REVIEW

Judicial review of the denial of disability benefits under Section 205(g) of the Act, 42 U.S.C. § 406(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir.1994). Conversely, a finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir.1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983)).

Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). Rather, conflicts in the evidence are for the Commissioner to decide. *See Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir.1990)).

Substantial evidence includes: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *See Fraga v. Bowen*, 810 F.2d 1296, 1302, n. 4 (5th Cir.1987). It is "more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Paul*, 29 F.3d at 210 (quoting *Muse*, 925 F.2d at 789).

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *See Paul*, 29 F.3d at 210 (citing *Richardson*, 402 at 390, 91 S.Ct. at 1422). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever

fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook v. Heckler,* 750 F.2d 391, 393 (5th Cir.1985).

The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Latham v. Shalala,* 36 F.3d 482, 483 (5th Cir.1994).

## FACTS

### A. Background—Age, Education, Work History

Plaintiff was born on August 18, 1941. At the time of her hearing, plaintiff was 54 years old. She completed the eleventh grade of high school and can read and write. Her latest past relevant work consists of working in the central sterilizing department of a hospital. Prior to that, plaintiff worked as an assistant supervisor of a medical center supply room and a hospital nurse's aide. *See Transcript* at 109.

### B. Medical Facts and Opinions

Plaintiff submitted medical records from several sources over the course of the years, showing a deterioration of her health. Because periods of insured status differ for conventional disability benefits and for statutory blindness benefits, proper analysis of plaintiff's claims require that the medical evidence be divided into two groups: (1) evidence regarding plaintiff's diabetes and eyesight dated June 30, 1980 or earlier; and (2) all evidence regarding plaintiff's eyesight dated up to the time of the hearing before the ALJ. This fragmentation of the evidence is appropriate because plaintiff's insured status for conventional disability benefits expired June 30, 1980, whereas her insured status for statu-

tory blindness disability benefits continued up until the date of her hearing.

### 1. Evidence Dated June 30, 1980, or Earlier

Plaintiff submitted hospital records from November 8, 1977, to November 23, 1977, where she was treated at Memorial Hospital for an upper respiratory infection. Dr. J.E. Martin listed the following as a final diagnosis on plaintiff:

1. Upper respiratory infection with nausea and vomiting

2. Bilateral pneumonia

3. Diabetes mellitus

*Transcript* at 139. Dr. Martin noted that plaintiff is a known diabetic and takes 25 units of NPH Insulin every morning and 5 units NPH every afternoon.

This hospital record is the only medical evidence generated prior to plaintiff's insured status expiration date of June 30, 1980. Plaintiff's next two medical records submitted were from August, 1980, and March, 1982; plaintiff next sought medical treatment from Memorial Hospital on August 28, 1980 for a "high fecal impaction—colon" (*see Transcript* at 147); and then nearly two years later, on March 2, 1982, plaintiff again sought treatment at Memorial Hospital for acute bronchitis with nausea and vomiting (*see Transcript* at 156). These records, however, are not relevant to plaintiff's application for conventional disability benefits because they describe plaintiff's condition after her insured status expired.[2]

### 2. Evidence Regarding Blindness

As noted earlier, plaintiff's insured status continues until age 65 with respect to her application for statutory blindness benefits. Thus, all evidence up to the date of the administrative hearing may be considered. However, only evidence regard-

---

**2.** The remainder of the medical evidence submitted outlines treatment plaintiff received from 1982 through 1996, at least two to six-

teen years after her insured status expired for Title II disability insurance benefits.

ing eyesight is relevant to this aspect of plaintiff's claim.

### a. Memorial Hospital, Lufkin, Texas

Hospital records from 1977 dealing with plaintiff's bout with an upper respiratory infection noted that plaintiff had underwent cataract surgery in her left eye. *See Transcript* at 141.

### b. Attachment to Request for Hearing by Administrative Law Judge

Plaintiff stated that in 1987, her left eye was removed. *See Transcript* at 75.

### c. Disability Determination Services, Austin, Texas

In an ophthalmological consultative examination report dated December 6, 1994, Dr. V. McGruder found plaintiff's vision in her right eye to be 20/80. His diagnosis for her right eye was "Proliferative Diabetic Retinopathy—TREATED." *Transcript* at 659–60.

### d. Texas Commission for the Blind, Arlington, Texas

On February 6, 1995, Douglas N. Martin, O.D., examined plaintiff and determined that although plaintiff is visually impaired, she is not legally blind. He noted her case was borderline. Dr. Martin found that she could read newsprint and that her eyesight is better on small print. He noted she had good steady hands and "fairly good skills with devices." *Transcript* at 676.

### e. The Heart Institute of Texas, Lufkin, Texas

Dr. J.S. Chandra, plaintiff's cardiologist, stated in a letter dated May 17, 1995, that plaintiff "has been declared legally blind secondary to diabetic retinopathy." *Transcript* at 283.

### f. Dr. Saeid Abedin, Houston, Texas

Dr. Abedin, Ophthalmologist, treated plaintiff for several years. In a letter dated January 12, 1996, the doctor summed up his treatment and diagnosis of plaintiff:

I saw Mrs. Mary Homan on January 8, 1996 and I found her best corrected vision in her only seeing eye to be 20/60. A visual field examination was performed. . . . She has prosthesis of the left eye and in her only seeing eye, she is suffering from proliferative diabetic retinopathy and is visually impaired, both on the basis of the quality of her central vision and visual field examination. Her peripheral field examination in her only eye has 20% or less visual field efficiency. She definitely has contraction of the peripheral field. Considering both her central vision and visual field examinations, she has a visual efficiency of 20% or less in her only seeing eye.

*Transcript* at 678.

### C. Evidence Presented at the Administrative Law Judge Hearing

Plaintiff testified at her hearing before the ALJ on February 12, 1996. She stated that she was last employed in 1974, and she had to quit that job because she was unable to see well enough to do her work properly. *See Transcript* at 26. Plaintiff worked at a hospital in Greenville, Mississippi in the central sterilizing department. *See id.*

Plaintiff testified that her vision was impaired due to diabetes, which she claims to have had since she was six years old. *See id.* at 26. She further testified that several weeks prior to the hearing, she underwent an amputation above the knee of her left leg. *See id.* at 27. Plaintiff stated that her doctor had indicated to her that her vision in her right eye was 20 percent or less, and was 20/50 with the correction of wearing glasses. *See id.* at 27–28. Her left eye is a prosthesis. *See id.* Plaintiff stated that she does not drive and reiterated that she has not been gainfully employed since 1975 because she "can't see to do the work." *Id.* at 29. On a daily basis, plaintiff testified that she is unable to do

any household chores. Her husband takes care of everything. *See id.* at 29–30.

When questioned by the ALJ, plaintiff stated that she is married and has one child that is married. Only plaintiff and her husband reside in the house. She indicated she completed the eleventh grade, can read and write, but did not get a GED. *See id.* at 31–32.

Plaintiff testified that her main disability is her lack of vision and that it was caused by her diabetes. She stated that presently the insulin keeps her diabetes under control. *See id.* at 32. She further indicated that she had a kidney transplant in 1992. *See id.* at 33. Plaintiff stated that she was not much stronger nor did she have much more stamina in 1980 compared to at the time of her hearing. *See id.* She further testified that her diabetes was at the extent in 1980 as it was at the time of her hearing. *See id.* at 34.

Plaintiff also claimed to have high blood pressure, but stated that her medication controls it well. *See Transcript* at 34.

### THE ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ issued an opinion on June 26, 1996, denying benefits to plaintiff. The ALJ's findings, in relevant part, were:

1. The claimant met the insured status requirements of the Act on July 1, 1975, the date she stated she became unable to work, and continued to meet them through June 30, 1980 (Exhibit 15).

   .        .        .        .        .

3. There is no medical evidence prior to June 30, 1980, her date last insured for disability insurance benefits. Therefore, the only impairment that can be considered in this decision is her allegation of legal blindness since she is insured only for statutory blindness through March 2007.

   .        .        .        .        .

6. The claimant's visual problems do not meet or equal Listing 2.02 of 2.03A or B which are the listings which denote statutory blindness (20 C.F.R. § 404.1581).

7. Because the claimant is not statutorily blind, she must be found "not disabled" since she exhibited no disabling impairments prior to June 30, 1980, her date last insured for Disability Insurance Benefits.

*Transcript* at 13–15.

The ALJ first looked at the record and determined at step one that plaintiff had not engaged in substantial gainful activity since July 1, 1975, the date she stated she became unable to work. He also noted that plaintiff continued to be insured through June 30, 1980, the date her insured status expired. The ALJ explained that, under Title II of the Act, plaintiff must establish disability before that date to be eligible for Title II disability insurance benefits.

The ALJ then declared at the second step that plaintiff had a "severe impairment" by regulatory definition due to plaintiff's visual problems.

At step three, the ALJ examined whether plaintiff met or equaled the listing of impairments so as to be found presumptively disabled. He looked specifically at Sections 2.02 and 2.03A and B which denote statutory blindness. *See* 20 C.F.R. § 404.1581. However, although her condition was deemed severe, the ALJ concluded that plaintiff did not meet the requirements to be considered presumptively disabled as outlined in the listing of impairments. The ALJ, when discussing the conflicting opinions regarding whether plaintiff is legally blind, expressly rejected the statement made by Dr. J.S. Chandra, plaintiff's cardiologist. The ALJ noted that "Dr. Chandra is not an ophthalmologist and his statement is not based on medical evidence. The evidence does not support the finding that the claimant's visual problems meet the definition of statutory blindness as outlined in the listings." *Transcript* at 14–15.

The ALJ concluded by stating that because plaintiff is not statutorily blind, she must be found "not disabled" since she exhibited no disabling impairment or combination of impairments prior to June 30, 1980, the date she was last insured for disability insurance benefits.[3]

## PLAINTIFF'S POINTS OF ERROR

Plaintiff presented seven points of error for consideration as follows:

1. The hearing examiner erred in failing to find that Mary Homan had one or more listed disabilities and that those disabilities singularly and corporately date back to the period of insurability which terminates June 30, 1980. In fact, these disabilities predate 1980, therefore, Mary Homan should be covered under Social Security Disability.

2. The hearing examiner erred in failing to find that Mary Homan had the listed disability of blindness on the date of her last employment in 1974.

3. The hearing examiner erred in failing to find that Mary Homan was statutorily and legally blind before June 30, 1980.

4. The hearing examiner failed to find that Mary Homan was statutorily and legally blind at the present time.

5. The hearing examiner failed to find that the blindness which caused her to lose her employment on July 1, 1975, was brought about by diabetes mellitus.

6. The hearing examiner erred when he failed to combine diabetes mellitus and blindness when determining insurability.

7. The hearing examiner erred when he failed to determine that Mary Homan meets the listing requirement for blindness under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.03(c).

*Plaintiff's Brief* at 1–2. Although these alleged errors were listed separately, plaintiff consolidated these issues and presented only three arguments: (1) that plaintiff is statutorily blind; (2) that plaintiff qualifies for disability due to both her blindness and diabetes mellitus; and (3) that plaintiff is disabled when the cumulative effect of both blindness and diabetes is considered. Therefore, the undersigned will address the three arguments as presented.

## DISCUSSION AND ANALYSIS

### A. Plaintiff's Application for Conventional Disability Insurance Benefits

■ Plaintiff testified that she has been treated for diabetes since age six. When she left her job in 1975, she stated it was due to her diabetically-induced retinopathy or retinitis proliferans. *See Plaintiff's Brief* at 6. She claims that she meets the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.08D, which read as follows:

*9.08   Diabetes Mellitus.*   With:

.         .         .         .         .

D.   Retinitis proliferans; evaluate the visual requirement under the criteria in 2.02, 2.03, or 2.04.

While plaintiff showed that in *1996*, she met the requirements of § 9.08, coupled with § 2.03C, she must further get past the threshold issue of insured status required for conventional Title II disability insurance benefits. Plaintiff has not disputed the ALJ's finding that her insured status for disability insurance benefits under Title II expired on June 30, 1980. Therefore, only medical evidence dated on or before June 30, 1980 may be considered.

The only medical records evidence prior to plaintiff's insured status expiring are from Memorial Hospital in Lufkin, Texas, where she was treated for an upper respiratory infection. While the treatment

---

**3.** The ALJ did not continue with the other two steps in the five-step analysis. However, plaintiff did not raise this as an issue. "By local orders, this court's review is restricted to points of errors specifically raised and discussed in briefs submitted after the administrative transcript is fixed." *Brady v. Apfel*, 41 F.Supp.2d 659, 667 (E.D.Tex.1999).

notes mention that plaintiff is diabetic, there is nothing in the record to indicate that plaintiff's diabetes was not being properly controlled with medication. "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically-determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." Social Security Ruling 96-7p.

Even medical records outlining treatment of plaintiff within the first two years *after* her insured status expired do not mention vision problems or uncontrolled diabetes. While records from several years later show that plaintiff has certainly suffered serious complications due to her diabetic condition, for purposes of disability insurance benefits under Title II, plaintiff must show she was disabled prior to June 30, 1980. The ALJ properly found that the medical evidence does not establish this.

Those claiming disability insurance benefits under the Act have the burden of showing the existence of a disability. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.1979). Plaintiff also bears the burden of establishing a disabling condition before the expiration of her insured status. *See Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

Substantial evidence supports the Commissioner's determination that credible evidence did not support plaintiff's application asserting that her conditions of blindness and diabetes mellitus rendered her disabled on or before June 30, 1980. No argument is advanced that the ALJ (whose findings and conclusions are the basis for the Commissioner's decision) applied incorrect principles of law. Therefore, the Commissioner's decision must be affirmed.

## B. Plaintiff's Application for Statutory Blindness Benefits

Plaintiff next contends that she meets the requirements to be considered statutorily blind as set out in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.02, 2.03 and 2.04—specifically, that she meets the requirements listed in § 2.03C. However, it must first be noted that the requirements listed in § 2.03C do not define statutory blindness. Rather, the standard for determining statutory blindness is set out by Listing 2.00A7 as follows:

> The term "statutory blindness" refers to the degree of visual impairment which defines the term "blindness" in the Social Security Act. Both 2.02 and 2.03A and B [of the Listing of Impairments] denote statutory blindness.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00A7. The criteria for statutory blindness established in §§ 2.02, 2.03A and 2.03B follows:

> 2.02 *Impairment of central visual acuity.* Remaining vision in the better eye after best correction being $^{20}/_{200}$ or less.
>
> 2.03 *Contraction of peripheral visual fields in the better eye.*
>
> A. To 10 degrees or less from the point of fixation; or
>
> B. So the widest diameter subtends an angle no greater than 20 degrees.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.02 and 2.03.

To be found statutorily blind, one must first meet the insured status requirements and then be able to bear the burden of proof for one of the requirements listed in § 2.02, 2.03A, or 2.03B. *See* 20 C.F.R. §§ 404.130(e), 404.1509, and 404.1581. The ALJ determined that plaintiff is insurable for statutory blindness until March 31, 2007. This is a date which neither plaintiff nor defendant dispute.

Having established that plaintiff gets past the threshold question of insured status for statutory blindness only, she must

next prove that her condition meets the requirements of §§ 2.02, 2.03A, or 2.03B of the Listing of Impairments. Plaintiff presented medical evidence from 1996 that she claims meets the requirements of § 2.03C of the Listing of Impairments. Section 2.03C reads: "Contraction of peripheral visual fields in the better eye to 20 percent or less visual field efficiency." 20 C.F.R. Pt. 404, Subpt. P.App. 1, § 2.03C.

Dr. Saeid Abedin stated in his letter dated January 12, 1996, "her peripheral field examination in her only eye has 20% or less visual field efficiency." *See Transcript* at 678. Although the doctor stated that plaintiff has a visual efficiency of 20% or less, thereby meeting the conditions of § 2.03C, this simply does not establish statutory blindness. To be considered statutorily blind, plaintiff must prove that she meets the requirements of §§ 2.02, 2.03A, or 2.03B of the Listing of Impairments, not § 2.03C. Plaintiff fails to establish that she meets the requirements listed in §§ 2.02, 2.03A, or 2.03B of the Listing of Impairments; therefore, she fails to establish that she is statutorily blind.

■ Conflicting opinions were submitted regarding whether plaintiff is "legally" blind. Although Dr. Abedin stated that plaintiff *is* legally blind (*see Transcript* at 195), and although other physicians have concluded that she is *not* legally blind (*see id.* at 64, 660, and 676), for purposes of *statutory* blindness, objective evidence must show that plaintiff meets the requirements listed in §§ 2.02, 2.03A, or 2.03B of the Listing of Impairments. The ALJ expressly rejected Dr. J.S. Chandra's statement that plaintiff is legally blind because his statement was not based on medical

evidence. *See Transcript* at 14–15. The medical evidence fails to show that plaintiff meets the requirements for any of the sections that denote statutory blindness. Therefore, plaintiff's argument that she met the requirements for statutory blindness also lacks merit.

## C. Cumulative Effects of Diabetes and Blindness

Plaintiff finally argues that she is disabled because both her diabetes and blindness are established and were the cause of her loss of employment in 1975. This final argument is relevant only as it relates to conventional Title II disability insurance benefits.[4] Therefore, plaintiff must show that, considering the cumulative effects of diabetes and blindness, she was disabled by June 30, 1980 or earlier.

■ It is proper for the Court to take into consideration all of the claimant's impairments and consider their cumulative effect on claimant's ability to perform a job. *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *see also Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir.1985). "In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis for eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C.A. § 423(d)(1)(A).

4. This conclusion is dictated by both logic and policy considerations. Cumulative effects of other health conditions affect a person's disability generally, but do not make a person more or less blind. Therefore, it is irrelevant to an application for statutory blindness benefits. Moreover, a contrary view would enable applicants to circumvent insured status requirements.

Plaintiff's eyesight was not impaired enough at the time of her hearing to entitle her to statutory blindness benefits. Her dia-

betes mellitus, however, has now progressed to the extent that it alone may constitute a disabling condition within the meaning of 42 U.S.C. § 423(d)(1)(A). Plaintiff is precluded from presenting such evidence directly because her insured status regarding a disability due to diabetes mellitus expired June 30, 1980. But she would succeed in doing so indirectly if the ALJ were required to receive evidence of cumulative effects of all conditions in connection with an application concerning statutory blindness.

While plaintiff may well have become disabled at some point due to the cumulative effect of a combination of impairments, the evidence does not support a finding that plaintiff's vision had deteriorated to such a degree that would meet the requirements for *blindness* at the time her insured status expired—June 30, 1980. Further, the evidence also does not support a finding that plaintiff's *diabetes* had deteriorated to such a degree to find her disabled on June 30, 1980—the date her insured status expired. Indeed, the only medical evidence presented and dated prior to plaintiff's insurance status expiring dealt with an upper respiratory infection. Nor is there anything suggesting that the combined effects of these impairments as of June 30, 1980 would warrant a finding of disability.

As noted earlier, a claimant for disability benefits has the burden of proving a disability. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir.1991). The arguments in plaintiff's brief concerning this alleged point of error discuss reports from doctors dated primarily in 1994 and 1995—at least fourteen years after her insured status expired. Evidence showing degeneration of a condition *after* insured status has expired is not relevant to the Commissioner's analysis. *See Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir.1995).

### CONCLUSION

This case provides a dramatic example of just how formidable a disability claimant's burden of proof is. It also highlights unrealistic eligibility requirements that can result in an injustice. The claimant—having lost one eye, having lost virtually all vision in her remaining eye, and having suffered an amputation of a leg as a result of progressive debilitating effects of diabetes mellitus—unquestionably has a tragic disability within any common-sense understanding of the word. However, a harsh statute and convoluted administrative rules of application resulted in denial of her applications. Further, the limited role of judicial review and the high deference to credibility choices required of a reviewing court compel the conclusion that the Commissioner's decision denying benefits be affirmed.

### RECOMMENDATION

In light of the foregoing, it is recommended that the above-entitled social security action be **DISMISSED**.

### OBJECTIONS

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *See Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).